Good morning, your honors. May it please the court. My name is Rasha Gurgis. I'm at the law firm of Jones Day, and we represent the petitioner Martin Jimenez Castro. I would like to reserve two minutes for rebuttal. Through this petition, Mr. Castro respectfully requests that this court review and reverse an order of the Board of Immigration Appeals denying his motion for reconsideration. In the alternative, Mr. Castro requests that this court reinstate the remaining balance of his voluntary departure period, which is 20 days. This court recently clarified the voluntary departure period issue in Barroso, so I will discuss that issue first. As we explained in our Rule 28J letter, Barroso explained that an alien's voluntary departure period is automatically told once he files a timely motion for reconsideration during his voluntary departure period. That is exactly what happened here. Mr. Castro filed his reconsideration motion just 10 days after being granted 30 days in which to voluntarily depart from the United States. The Board nonetheless held that Mr. Castro had already violated his voluntary departure period and therefore was ineligible for cancellation of removal. That ruling is clearly erroneous under Barroso and must be reversed. Furthermore, Mr. Castro is being fundamentally prejudiced by the Board's error because he is now having to suffer the harsh consequences of violating a voluntary departure order that he has never been given an opportunity to fully comply with. For this reason, we are requesting that the Court at a minimum provide Mr. Castro with 20 days to voluntarily depart from the United States. So an underdust of the calculation would be 20 days from the time of the issuance of our mandate? Correct. Unless the Court has any questions about the voluntary departure period issue, I would move on to the primary relief we are seeking, which is reversal of the Board's decision. I have no questions about that unless the Government objects to what you just said. Okay. On the primary relief we are seeking, the Government does not dispute any of the merits arguments that Mr. Castro raises in his supplemental opening brief. The Government essentially concedes reversible error but claims that this Court is powerless to do anything about it. The Government is wrong. Under 8 U.S.C. § 1252, this Court has jurisdiction to review a denial of reconsideration motion and the Government concedes this on page 2 of their brief. The Government also concedes that Mr. Castro filed a timely petition for review of his order denying his reconsideration motion. Therefore, this Court does have jurisdiction to address the merits of Mr. Castro's The merits are what? Meaning it's an abuse of discretion standard and what's the abuse of discretion here? The abuse of discretion here is that the Board claims that it had reviewed the underlying decision and found that there were no errors. And, in fact, if a review of the underlying decision does reveal that there are at least four significant errors that constitute an abuse of discretion, the Board failed to recognize certain relevant factors in the exceptional hardship analysis, considered an irrelevant factor that the fact that Mr. Castro's son's mother lives in Mexico, which is irrelevant given that there is no evidence in the record that Mr. Castro's son has any relationship with his mother. And, in fact, the only evidence in the record is that Mr. Castro's son does not see his mother. The other errors in the underlying decision is that the Board failed to consider all of the factors cumulatively. If you review the underlying decision... The son speaks Spanish, doesn't he? There is evidence in the record that Mr. Castro's son is bilingual. However, there is no evidence in the record as to the proficiency of his Spanish-speaking ability. And how old is his son? At this point, the son is 20 years old. Twenty years old? Correct. He's in school? Yes, he is in college at this point. Where is he going to college? It's a community college. I'd have to look in the record. It's mentioned in Mr. Castro's reconsideration motion. He's going to a community college at this point. And there's... This is not strictly relevant, but I noticed in the record that there was some, I'll call it, How are his grades? The records in the... As the record stands, he had substantially improved his grades. I believe when he was in high school early on, he was not getting as good grades as he did when he became a senior. And at this point, there is no evidence in the record. We can definitely supplement that record. I'm not sure it's relevant to the decision in front of us. Right. But he is a student, and he does have the desire to continue his education. There's no evidence in the record that he would be sufficiently proficient in Spanish to be able to go to school in Mexico and successfully complete college in Mexico, given his proficiency in Spanish. So there are significant errors. But he's of an age that he can feasibly live on his own at this point. He's a U.S. citizen. Correct. He's 20 years old. He's in college. He's of an age that he's easily emancipated. Correct. There are two responses to that. First, the legislature has determined that the exceptional hardship can apply to a child that is 21 years old or under. So he still falls within the range of where the hardship can apply. But that's all discretionary. That's not mandatory. Correct. And the other thing that the board did not consider is that Mr. Castro's son is completely financially and emotionally dependent on Mr. Castro, so that at this point if Mr. Castro were to be removed from the United States, Mr. Castro's son would have no economic ability to attend college on his own or to even provide himself with a shelter. Excuse me. I guess I'll call it a conceptual problem with your argument. I'm with you so far as you say, well, we're reviewing a decision by the board not to reopen and that we have jurisdiction over that. We review that for abuse of discretion. But then you answered when I asked, okay, so where's the abuse of discretion, in a way that leads us right back into the merits of the hardship determination, which if it were directly appealed to us, we have no jurisdiction whatsoever. And I'm seeing your argument leading me by a different route, back to precisely what Congress has told us we have no jurisdiction to do. How do I deal with that problem? Well, I believe the cases of Ma and Mejia give this court authority to review an otherwise unreviewable decision. To the extent the board adopted the underlying decision in denying Mr. Castro's reconsideration motion, that order is not directly reviewable but is available for you to review to determine whether Mr. Castro's reconsideration motion should have been granted. But I think I heard you say that it's an abuse of discretion to deny his motion for, I guess, his reconsider because they should have reconsidered it because it was wrong. But I can't – I have no jurisdiction to determine whether it's right or wrong. Or am I wrong about that? Well, this Court does not have jurisdiction to review the underlying decision directly, and this Court cannot substitute its own discretion of the balance of hardships. But here, all that Mr. Castro is asking is for the board to reconsider its earlier decision under the proper legal framework of considering all of the relevant factors, disregarding irrelevant factors, and deciding all of the factors cumulatively rather than isolation. Okay. Under a reconsideration standard, this Court has jurisdiction to remand the action for that determination. Thank you. The other – and again, I think it's remarkable that the government does not dispute any of these merits arguments but instead relies on two jurisdictional arguments that are meritless. I see that my time is running out. Go ahead. Thank you, Your Honor. The two arguments that the government raises is that the Court cannot review the reconsideration motion or the order from the reconsideration motion because it would require the Court to review the underlying decision. That argument has been rejected by Mejia and Ma. And further, the Eighth Circuit cases that are cited in the reply brief also indicate that the Court can review an otherwise unreviewable order upon a review of the reconsideration motion. And the other argument about exhaustion is also meritless. Mr. Castro filed a pro se reconsideration motion, and that should be construed liberally. And Mr. Castro raised all of the factual arguments that are raised in our supplemental opening brief. He didn't use the same legalese, but that's not required. At this point, I'd like to yield any of the time remaining for my rebuttal. Thank you. Okay. Thank you very much. Good morning. May it please the Court. Jan Redfern for the respondent, the Attorney General. Your Honors, there are several jurisdictional bars precluding review of the denying Do you mind starting with the voluntary departure? Certainly. Do you agree with what was already stated about voluntary departure? I agree with the factual circumstances, yes, that he filed his motion to reconsider within 10 days of the Board's decision while he had 20 days of voluntary departure remaining. And do you agree that under our current case law that that means that he's entitled to voluntary departure 20 days' worth after our decision comes out? I would agree that that's what the case law does state. However, the government's argument is that that case That's the law of the circuit, isn't it? Yes, Your Honor, it is. Why are you so careful about saying Because at the You come here all the way from Washington, D.C., to make sure that this guy gets kicked out that's been here, what, 22, 23 years? Never been in trouble in his life. He's got an American citizen child. Works every day. Huh? So that's the law of the Ninth Circuit. Regarding voluntary departure, yes, Your Honor, it is. So why do we have to even quibble about it? Well, the only concern that the government has is that those cases came way after the Board's decision in this case. So that the circuit precedent at the time of the Board's decision was not that a timely filed motion to reconsider. But do you dispute that our case law is applicable to this case because it was still a live case at the time you're now in front of us? I don't dispute it, Your Honor. However, I would state that Well, then why are we, again, why are we fussing about this? Why wasn't your answer yes? Because the only Your Honor, the government has one point with respect to the voluntary departure, and that is to take the approach, the more reasonable approach that this Court took that the government would be on notice from this point forward in the language of the Court that the government or the Board was on notice that that is the law of the land. And at this point, if the Court imposes a law that didn't exist at the time, the Board is always going to be reversed in all of these cases. But the standard answer is that any court of appeal, in any case, immigration context or other, applies the law in effect at the time the appeal is heard. That's correct, Your Honor. The other point I would make, I apologize. I said there was one point. There's actually two. The other point is that the Board, unlike the cases in Azarte and Barrasso, the Board did not deny the motion to reconsider only because the petitioner had failed to voluntarily depart. The Board, in this case, denied the motion to reconsider because the petitioner failed to allege any errors of fact or law in a previous decision. And that's why the Board denied cancellation of removal, not because the petitioner failed to voluntarily depart. I understand that. So that's the distinction the government would make with respect to voluntary departure. Well, he was there in pro per, wasn't he? Yes, Your Honor. And before that, he had some lawyer that brought up his matter. He wanted to really establish his legality in this country, his legal presence. And he brought up, he was looking for, because of economic, harsh economic conditions in Mexico. And that was, what, the basis of an asylum application? Yes, Your Honor. But that is so ridiculous that an attorney would do that. Wouldn't that tell you this attorney was just totally incompetent and out of it? No, Your Honor. I don't believe there's any allegation of ineffective assistance of counsel. And, in fact, the attorney withdrew the application at the immigration hearing and instead substituted a cancellation of removal application. So there's no evidence in the record that the attorney was ineffective. And there's no allegation certainly before this Court. He was certainly stupid when he raised that issue about harsh economic conditions, thinking that his client was going to get asylum. Well, that's debatable. One of the problems that I see it is that there's some complicity here, as far as the government's concerned, in my mind, that we have people that go up, you know, with the IJs and, you know, and the BIA, which now is no longer really very effective because everything comes directly to us. But the people that run this system know that it's just fraught with incompetent attorneys and with notarios and that people's money is taken, you know, thousands and thousands of dollars. And there was a time, and I think it's been changed, where you could be a disbarred attorney in the State of California and you could still appear before an immigration judge. Do you know that? Yes, Your Honor. Yeah. I mean, what does that tell us? What does that tell us? It tells us that there's no evidence in this record that there is an ineffective counsel. There is a perfectly good counsel. But what it tells us is that the system we have to see that people's rights are taken care of is pretty rotten when it comes to these immigration matters. That's what it tells me. We have no standards for them. Anybody can come in and represent anybody else. And everyone knows it. And yet we close our eyes and think that justice is being served here. But anyway, what does he need to do to be able to stay here with his American citizen son? Your Honor, the government is ---- What does he need to do? I mean, you're the expert on this. Now, let's say you're his lawyer. Now, what would you advise him to do? I can't speak to that, Your Honor. What I would say, though, is that he did have ---- Why can't you speak to that? Because I'm not his attorney, Your Honor. I'm here to represent the government. And he had a perfectly good cancellation application that was denied by the immigration judge and the board. And the court is ---- the government is very well aware of this court's concerns, that there's no jurisdiction to review a hardship determination in a cancellation application and would submit that that may be an issue for an en banc decision by this court. But barring that, there is no review of the denial cancellation of application in this case where the sole denial was because the petitioner failed to demonstrate exceptional and unusually extreme hardship to a U.S. citizen person, in this case his son. And there's also two other jurisdictional preclusions in this case, being the fact that the petitioner failed to file a petition for review. Is it the government's view that this son should go back to his father, to Mexico? Not at all, Your Honor. He's a U.S. citizen. We have no jurisdiction to deport U.S. citizens. So why did you bring up this subject that he speaks Spanish? I didn't bring that up, Your Honor. I believe that was asked of previous counsel. But whether he speaks Spanish or doesn't speak Spanish is not before the court because that all goes to the determination of whether he met the hardship determination or the hardship requirement as required for cancellation of application. Well, could the government give him a waiver of inadmissibility to help him out? I don't believe there's a waiver, Your Honor, no. He was denied cancellation because he failed to meet the hardship requirement. There's no waiver for a hardship requirement. A waiver would be more of a criminal grounds, and there is none in this case. At this point, there's no relief for the petitioner. He's been denied cancellation of removal, and he has no other relief available. He doesn't have a legal right to remain in the United States. And as unfair as that may seem to the court, that's the way it is, and there's plenty of other people who have more harsh consequences in leaving the United States than this particular petitioner. Oh, yeah, because we have a very harsh system, so a lot of people get caught in it. Now, this son who was born here, he'll turn 21 in November. Yes. Right. Now, can he petition for his father for citizenship? I believe when he does turn the majority age of 21, he may file a petition, a visa petition for an immediate family relative. So that may be an option for him. That may be an option for him. Okay. But at this point, Your Honor, because Let me just talk about that. So that would be an option for him. So, all right, if the father leaves voluntarily and goes back to Mexico and the son files such a petition right after his 21st birthday, what happens next? The petitioner would have to wait in his country, in Mexico, for that visa petition to be approved and to seek a request from the Attorney General to re-enter the United States under that visa petition if it's approved and he has an immediate family visa petition. Okay. So how long does that take? I have no idea, Your Honor. I couldn't tell you that. Does the fact of his father's removal have any bearing on his admissibility through a petition from his son once his son turns 21? If the court sustains the removability but, again, grants him the 20 days to voluntarily depart after issuance of the mandate, there would be no ‑‑ I don't believe there would be any bars to his seeking readmission under the son's visa petition. All right. So at that time, there's no specific requirement that he remain out of the country for a year, five years, or ten years. If he voluntarily departs, there are no bars for seeking that enrollment. If he voluntarily departs, there are no bars. And then it's just a matter of how this is processed. That's correct, Your Honor. And we have no idea how long that would take? I couldn't tell you the inner workings of DHS as far as the priority of visa petitions goes. Sorry. You can't tell me what it is? I can tell you now, Your Honor. I don't process visa applications. I couldn't tell you what the priority level is. I know that immediate family visas are usually one of the top priorities of granting visa petitions. I see that my time is up if there are no further questions. No, sir. We've got plenty of time. We give a lot of time, too. Do you want any more questions? No. No questions. Thank you. Thank you. Ms. Buttle. Thank you, Your Honor. Just one point about the voluntary departure period. The Court is correct that if Mr. Castro is not allowed to voluntarily depart, he will be barred for ten years. So even though his son turns 21 in November, he will be ineligible to ever enter the United States for at least a period of ten years. I think it took the government a few minutes to get there, but I think the government's answer was you're right on voluntary departure. Correct. Thank you, Your Honor. The other thing that the government did right now during oral argument was raise a third jurisdictional issue that was never briefed in the papers. And so I have not had an opportunity to research or fully brief that issue. And the government essentially said that the Court has no jurisdiction to review a reconsideration motion if the underlying reason for the denial was the hardship analysis. That was never raised in the government's brief. And if the Court is going to determine this case on that basis, I would request at least an opportunity to brief that issue. I don't believe that that is the rule. Under this Court's case law under 8 U.S.C. section 1252, this Court has jurisdiction to review a denial of a reconsideration motion, and Congress has not eliminated that basis through its recent legislation. And the government did not really address the other two grounds of their jurisdictional issues, and I would submit on the papers on those. Those arguments have been briefed, and I believe that those arguments are rejected under a proper analysis. Thank you. I just want to say this. Thank you very much. For the benefit of other counsel in this courtroom, we do have a program in the Ninth Circuit where when we send out these cases and we come across a case that we think deserves certain, well, they all deserve, but that needs counsel, and we'll appoint someone from, a lawyer from a law firm, and we guarantee them that they'll have the pleasure of appearing before us and arguing their cases, which looks good on anybody's resume in the future, so bear that in mind. Thank you.
judges: Kozinki, Trott, Bea